[Cite as *State v. McFadden*, 2023-Ohio-1630.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellee | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 22-COA-012 |
| DAVID MCFADDEN | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:      Criminal appeal from the Ashland County
Court of Common Pleas, Case No. 21-CRI-204

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      May 15, 2023

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER R. TUNNELL
Ashland Prosecutor
BY: NADINE HAUPTMAN
Assistant Prosecutor
110 Cottage Street, Third Floor
Ashland, OH 44805

For Defendant-Appellant

BRIAN A. SMITH
123 South Miller Road
Suite 250
Fairlawn, OH 44333

*Gwin, P.J.*

{¶1}    Defendant-appellant David James McFadden ["McFadden"] appeals his convictions and sentences after a jury trial in the Ashland County Court of Common Pleas.

*Facts and Procedural History*

{¶2}    On October 15, 2021, an Ashland County Grand Jury indicted McFadden for one count of Improperly Handling Firearms in a Motor Vehicle, a violation of R.C. 2923.16(B) and R.C. 2923.16(I), a felony of the fourth degree; and one count of Having Weapons While Under Disability, a violation of R.C. 2923.13(A)(3) and R.C. 2923.13(B), a felony of the third degree.    Each count of the indictment contained a forfeiture specification pursuant to R.C. 2941.1417.   A two-day jury trial commenced on March 1, 2022.

{¶3}    On September 27, 2021, at approximately 10:38 p.m., Cory Cornwell, a trooper with the Ashland County Ohio State Highway Patrol observed a Ford pick-up truck with a loaded trailer attached that did not have illuminated tail lights or a registered license plate.   1T. at 126.[1] The trailer was covered by a tarp secured with over 100 straps. Id. Trooper Cornwell initiated a traffic stop; however, the driver did not appear to notice as he pulled into a gas station.   1T. at 125-126.   Trooper Cornwell approached the driver side of the vehicle.   McFadden opened the door of the vehicle and was surprised to see the trooper.   Id. at 126.   From his vantage point, Trooper Cornwell was able to observe shotgun shells and plastic baggies on the driver's side floorboard.   Id.

---

[1] For clarity, the jury trial transcript will be referred to as, "__T.__," signifying the volume and the page number.

{¶4}    McFadden told the trooper that he did not have a valid driver's license. Id. at 126-127. Trooper Cornwell escorted McFadden to his patrol cruiser where McFadden was patted down for weapons. 1T. at 127. Trooper Cornwell ran the truck's license plates and was informed that the plates were registered to a Honda Civic. Because McFadden was unable to provide identification, Trooper Cornwell ran McFadden's social security number. Id. Trooper Cornwell was informed that McFadden's driver's license was suspended and he was also on parole. Id. at 127-128.

{¶5}    Trooper Peshek arrived on scene. 1T. at 128-129. Because the truck was to be towed, the two troopers began an inventory search of the inside of the pick-up truck. Id. Trooper Peshek located "dime bags," i.e. small plastic baggies that could be used to package, among other items, drugs. 1T. at 154-156.

{¶6}    Trooper Cornwell leaned the front bucket seat forward and saw approximately 7 inches of the butt of a shotgun partially covered by clothing on the floor of the back seat. 1T. at 129; 179. Trooper Cornwell testified that he had to fold the seats over to gain access to the area in the truck where the shotgun was found. 1T. at 129; 136; 152. Because it was loaded, Trooper Cornwell rendered the shotgun safe by ejecting the shells. 1T. at 129-130. At that point, Trooper Cornwell began a probable cause search, in addition to the vehicle inventory, and located a butane lighter and a glass smoke pipe with white residue in the center console ashtray and, based upon his training and experience, knew such items were commonly associated with and used to smoke methamphetamine. 1T. at 131.

{¶7}    When asked about the shotgun, McFadden told Trooper Cornwell that he thought the gun belonged to his father and he did not know it was in the truck. 1T. at 131.

Trooper Cornwell testified that the plates and registration for the vehicle came back to Donna Garber. 1T. at 213. Trooper Cornwell learned that Ms. Garber had a valid carry concealed permit. 1T. at 204.

{¶8} McFadden's father, David Samuel McFadden ["Samuel"] testified that he had purchased the truck from Donna Garber 3-4 days before the traffic stop. 2T. at 247; 253. The truck was dropped off at Samuel's house and left in his yard. 2T. at 247; 254. Samuel testified that the truck was stuffed with items to the extent that he could not see inside it. Id. The truck had bucket seats in the front that slide forward to permit access to the back. 2T. at 251. Samuel testified that he did not know what was inside the truck. 2T. at 255. Samuel further testified that he did not give anyone permission to drive the truck. Id. at 245. Samuel testified that he did not own any firearms and he did not own a shotgun. Id.

{¶9} At the conclusion of the testimony, the trial court granted McFadden's Crim. R. 29 motion and dismissed the forfeiture specification to Count 1 of the Indictment. 2T. at 267.

{¶10} The jury found McFadden guilty on both counts. On April 4, 2022, the trial court held a sentencing hearing and imposed a 12-month prison sentence, as well as forfeiture of the firearm. McFadden stipulated to the forfeiture of the shotgun as it related to Count 2 of the Indictment. 2T. at 275; 336.

*Assignments of Error*

{¶11} McFadden raises five Assignments of Error,

{¶12} 'I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} "II.    THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING STATE'S EXHIBIT 2, THE ENTIRE, UNREDACTED VIDEO OF THE TRAFFIC STOP, AS AN EXHIBIT, CONTAINING EVIDENCE RELATING TO APPELLANT'S PRIOR CONVICTIONS, WHICH UNFAIRLY PREJUDICED APPELLANT AND DEPRIVED HIM OF HIS RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶14} "III.    THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO FILE A MOTION TO SUPPRESS, SEEKING TO EXCLUDE THE RESULTS OF THE INVENTORY SEARCH OF APPELLANT'S VEHICLE, CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND A VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶15} "IV.    THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO OBJECT TO TESTIMONY AND OTHER EVIDENCE RELATING TO APPELLANT'S PRIOR CONVICTIONS CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND A VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶16} "V.    THE CUMULATIVE ERRORS OF APPELLANT'S TRIAL COUNSEL CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND A VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH

AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

I.

{¶17} In his First Assignment of Error, McFadden argues that his convictions are against the manifest weight of the evidence.

**Standard of Appellate Review – Manifest Weight.**

{¶18} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

{¶19} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541(1997), *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins* at 387, 678 N.E.2d 541, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982) (quotation marks omitted); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶25, citing *Thompkins.*

{¶20} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost

its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983).  Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."  Id.

**Issue for Appellate Review**: *Whether the jury as trier of fact clearly lost their way and created such a manifest miscarriage of justice, that the convictions must be reversed and a new trial ordered.*

**{¶21}** McFadden was convicted of Improperly Handling Firearms in a Motor Vehicle.  As in effect at the time of the offense, R.C. 2923.16, provided in relevant part[2],

(B) No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle.

**{¶22}** McFadden was further convicted of Having Weapons While under a Disability.  R.C. 2923.13, provides in relevant part,

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration,

---

[2] R.C. 2923.16 has been amended effective June 12, 2022 and again effective April 3, 2023, both of which occurred after McFadden's arrest.

distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

{¶23}   McFadden argues that the jury created a manifest miscarriage of justice in resolving conflicting evidence by finding first, that he "knowingly" transported the shotgun in the truck and second, that the shotgun was accessible to the owner or any passenger without leaving the vehicle.

**Knowingly**

{¶24}   R.C. 2901.22(B) sets forth the definition of how and when a person acts knowingly,

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶25}   Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Johnson*, 56 Ohio St.3d 35, 38,381 N.E.2d 637(1978) *citing State v. Huffman,* 131 Ohio St. 27, 1 N.E.2d 313(1936): *State v. Rojas*, 64 Ohio

St.3d 131, 139, 592 N.E.2d 1376(1992); State *v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695(1st Dist. 2001). (Footnote omitted.) Thus, "[t]he tests for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." Id. *citing State v. Adams*, 4th Dist. Ross No. 94 CA 2041, 1995 WL 360247(June 8, 1995) and *State v. Paidousis*, 10th Dist. Franklin No. 00AP–118, 2001 WL 436079 (May 1, 2001). *See also, State v. Butler*, 5th Dist. Holmes No. 2012–CA–7, 2012–Ohio–5030, ¶ 25.

### Possession

**{¶26}** R.C. 2925.01(K) defines possession as follows: "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D)(1).

**{¶27}** Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98(1989); *State v. Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787(1971); *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362(1982), syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351(1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93(8th Dist. 2000). Circumstantial evidence that the defendant was located in very close proximity to the

contraband may show constructive possession. *State v. Butler, supra; State v. Barr*, 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247-248(8th Dist. 1993); *State v. Morales*, 5th Dist. Licking No. 2004 CA 68, 2005-Ohio-4714, ¶ 50; *State v. Moses*, 5th Dist. Stark No. 2003CA00384, 2004-Ohio-4943, ¶ 9. Ownership of the contraband need not be established in order to find constructive possession. *State v. Smith*, 9th Dist. Summit No. 20885, 2002-Ohio-3034, ¶ 13, *citing State v. Mann*, 93 Ohio App.3d 301, 308, 638 N.E.2d 585(8th Dist. 1993). Furthermore, possession may be individual or joint. *Wolery,* 46 Ohio St.2d at 332, 348 N.E.2d 351. Multiple individuals may constructively possess a particular weapon simultaneously. *State v. Pitts*, 4th Dist. Scioto No. 99 CA 2675, 2000-Ohio-1986. The Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession. *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362, 1365(1982), *certiorari denied*, 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130(1982).

**{¶28}** In *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777(1979), the United States Supreme Court upheld a statute which provided that the presence in an automobile, other than a public one, of a firearm "is presumptive evidence of its possession by all persons occupying such automobile at the time except (a) where the firearm is found upon the person of an occupant, (b) where the automobile is being operated for hire by a licensed operator or (c) if the weapon is a handgun and one of the occupants, not present under duress, has a license to have a handgun." Id. at 442 U.S. 142-143, 99 S.Ct. 2217. The Court noted that the presumption was not mandatory; rather it was a permissive inference available only in certain circumstances. Further, the jury could ignore the presumption even if there

was no affirmative proof offered in rebuttal by the accused. Id. at 160-162, 99 S.Ct. at 2226-2227. Finally, the trial judge in *Allen* explained, "that possession could be actual or constructive, but that constructive possession could not exist without the intent and ability to exercise control or dominion over the weapons." Id. at 161, 99 S.Ct. at 2226.

{¶29} In the case at bar, McFadden was the sole occupant of the truck. McFadden's father testified he did not give anyone permission to drive the truck. He further testified that he did not own a shotgun or any other firearms. There were shotgun shells in plain view on the floor of the truck. Trooper Cornwell testified that a person in the driver's seat would not need to exit the truck in order to access the shotgun. 1T. at 132.

{¶30} The trial judge instructed the jury that possession could not exist without the intent and ability to exercise control or dominion over the weapon. 2T. at 320; 323. The trial judge further instructed the jury on the mandatory presumption of innocence that controls unless each juror is satisfied beyond a reasonable doubt that McFadden possessed the shotgun in the manner described by the judge. 2T. at 314-315. *See, Ulster County Court v. Allen*, 442 U.S. 140, 161, 99 S.Ct. 2213, 60 L.Ed.2d 777(1979).

{¶31} In the case at bar, the jury heard the witnesses, viewed the evidence, and heard McFadden's attorney's arguments and explanations about McFadden, the condition of the truck and the investigating officers' actions. The jury was able to see for themselves Trooper Cornwell subject to cross-examination. The jury had a real-time recording of the traffic stop and the encounter. Thus, a rational basis exists in the record for the jury's decision.

{¶32} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost their way nor created a miscarriage of justice in convicting McFadden of Improperly Handling Firearms in a Motor Vehicle and Having Weapons While under a Disability.

{¶33} Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the trier of facts lost its way and created a manifest miscarriage of justice. We do not find the jury erred when it found McFadden guilty. To the contrary, the jury appears to have fairly and impartially decided the matter. The jury heard the witnesses, evaluated the evidence, and was convinced of McFadden's guilt.

{¶34} McFadden's First Assignment of Error is overruled.

II.

{¶35} In his Second Assignment of Error, McFadden argues that the trial judge erred by admitting the video of the traffic stop, State's Exhibit 2, into evidence.

**Standard of Appellate Review**

{¶36} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). As the Ohio Supreme Court has recently explained,

> The term "abuse of discretion" connotes that "'the court's attitude is unreasonable, arbitrary or unconscionable.'" [*State v. Gondor*, 112 Ohio

St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77] at ¶ 60, *quoting State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Stated differently, an abuse of discretion involves more than a difference in opinion: the "'term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *State v. Jenkins,* 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984), *quoting Spalding v. Spalding,* 355 Mich. 382, 384, 94 N.W.2d 810 (1959). For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" Id., *quoting Spalding* at 384-385, 94 N.W.2d 810.

*State v. Weaver,* Slip Op. 2022-Ohio-4371, ¶24 (Dec. 8, 2022).

**Issue for Appellate Review:** *Whether the trial judge abused his discretion by allowing the state to introduce video and audio recordings made during the traffic stop*

{¶37} We note that McFadden's contentions are taken out of context. In the case at bar, portions of State's Exhibit 2 showing in real time the actions of McFadden and the officers during the September 27, 2021 traffic stop were played for the jury. 1T. at 132-133. During this showing, the prosecutor manually started and stopped the video to avoid parts of the video that were deemed not admissible. *See, e.g.,* 1T. at 135. McFadden did not object to this procedure. 1T. at 133. However, McFadden did object when the state offered State's Exhibit 2 into evidence. 2T. at 257-258. McFadden objected because the video was being offered in its entirety, i.e. without redacting the inadmissible

portions that were not played for the jury during Trooper Cornwell's testimony. The prosecutor explained that, at that time, his office did not have the technical expertise to create a redacted video. 2T. at 258-259. The trial judge made the following ruling concerning State's Exhibit 2,

> …I am going to admit the entire disk in the evidence, and limit the jury's access to the clips in the record, and we will prohibit that access, and if they ask for it, it would be a Bailiff to play, and limit the playback to those specific video files, so I don't anticipate the jury seeing anything objectionable, and they have not been shown anything objectionable yet is my understanding of the argument, and I am going to overrule the objection.

2T. at 259-260.

**{¶38}** The trial judge specifically stated that he would only allow the jury to view State's Exhibit 2 if the jury asked for the video. In that event, the judge would send a Bailiff to ensure that the jury only viewed the admissible parts of the video. McFadden does not cite to any portion of the record where the jury asked for, or received State's Exhibit 2. We cannot presume error from a silent record. *State v. Thomas*, 9th Dist. Summit No. 27266, 2015–Ohio–2935, ¶ 47, *quoting State v. Batton*, 9th Dist. Lorain No. 96CA006505, 1997 WL 60661, *5 (Sept. 17, 1997). Because the record does not affirmatively indicate the jury was shown any inadmissible portions of the video, we cannot find that the trial judge abused his discretion.

**{¶39}** McFadden's Second Assignment of Error is overruled.

III.

**{¶40}** In his Third Assignment of Error, McFadden contends that he was denied the effective assistance of trial counsel. Specifically, McFadden argues that his trial counsel should have filed a motion to suppress the inventory search of the truck.

**Standard of Appellate Review**

**{¶41}** To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693(1984). A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *Strickland* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52 (2000).

**{¶42}** Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000–Ohio–0448; *Accord, State v. Ortiz,* 5th Dist. Stark No. 2015CA00098, 2016-Ohio-354, ¶56. Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. *State v. Lavelle*, 5th Dist. No. 07 CA 130, 2008–Ohio–3119, at ¶ 47; *State v. Cheatam*, 5th Dist. No. 06–CA–88, 2007–Ohio–3009, at ¶ 86. The defendant must further show that there is a reasonable probability that the outcome would have been different if the motion had been granted or the defense pursued. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91

L.Ed.2d 305 (1986); *see, also, State v. Santana*, 90 Ohio St.3d 513, 739 N.E.2d 798 (2001), *citing State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

**Issue for Appellate Review:** *Whether there is a reasonable probability a motion to suppress the inventory search would have been granted*

{¶43} Only those whose rights were violated by the search itself can urge suppression of evidence obtained in violation of the Fourth Amendment. Standing is not achieved solely by a person's status as a defendant or by introduction of damaging evidence. *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176(1969). Consequently, before a court may review the reasonableness of police behavior, the defendant must be able to demonstrate that his Fourth Amendment right to privacy was violated. *State v. Grandos,* 5th Dist. Fairfield No. 13-CA-50, 2014-Ohio-1758, ¶55.

{¶44} One who is stopped operating a vehicle titled to another, and who subsequently seeks to suppress evidence found in the vehicle, must demonstrate lawful possession of the vehicle while operating it to establish standing. *State v. Edwards,* 12th Dist. Warren No. 2022-02-005, 2022-Ohio-2384, ¶37 (Piper, J., concurring). One who cannot demonstrate lawful possession, in turn, cannot meet the burden of establishing a reasonable and justifiable, subjective expectation of privacy in possessing the vehicle. *State v. Carter*, 69 Ohio St.3d 57, 63, 630 N.E.2d 355 (1994); *State v. Nicholson*, 5th Dist. Stark No. 2016 CA 00210, 2017-Ohio-2825, ¶ 22-23.

{¶45} In the case at bar, McFadden's father testified that he owned the truck and he had not given anyone permission to drive the truck. Further, Trooper Cornwell testified that McFadden's driver's license was under suspension at the time of the stop. 1T. at 127. "Those who unlawfully operate a motor vehicle knowing their driving privileges have

been revoked are aware they can be arrested at any time. Knowing they can be arrested due to their illegal operation of a vehicle, they cannot reasonably expect to be shielded from the events that follow, such as a search incident to arrest or an inventory search." *State v. Edwards,* 12th Dist. Warren No. 2022-02-005, 2022-Ohio-2384, ¶39 (Piper, J., concurring).

{¶46} In light of these facts, the Court finds that there is no evidence to conclude that McFadden had any legitimate expectation of privacy in the truck, and therefore he lacks standing to challenge the search of that vehicle under the Fourth Amendment of the United States Constitution or Article I of the Ohio Constitution.

{¶47} As there is not a reasonable probability that a motion to suppress the inventory search would have been granted, trial counsel was not ineffective in failing to file the motion to suppress.

{¶48} McFadden's Third Assignment of Error is overruled.

IV.

{¶49} In his Fourth Assignment of Error, McFadden contends that his trial counsel was ineffective because counsel failed to object to the state admitting evidence of his three previous convictions.

**Standard of Appellate Review**

{¶50} To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness."

Id., at 688, 104 S.Ct. 2052. And to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694, 104 S.Ct. 2052. *See, also, Andrus, v. Texas,* ⸺ U.S. ⸺, 140 S.Ct. 1875, 1881, 207 L.Ed.2d 335 (June 15, 2020).

**Issue for Appellate Review**: *Whether there is a reasonable probability that, but for counsel's failure to object, the jury would have acquitted McFadden of the charges*

{¶51} In addition to being convicted of Improperly Handling Firearms in a Motor Vehicle, McFadden was convicted of Having Weapons under Disability in violation of R.C. 2923.13(A)(3) which states the following:

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

{¶52} At trial, the state introduced evidence that McFadden had been convicted in Holmes County Court of Common Pleas, Case No. 11-CR-053 of Illegal Manufacture of Methamphetamine, a felony of the second degree in violation of R.C. 2925.04(A). 1T. at 138-139; State's Exhibit 3. McFadden had also been convicted in the Coshocton County Court of Common Pleas, Case No. 16-CR-0049 of Illegal Assembly or Possession

of Chemicals for Manufacturing of Drugs, and in Coshocton County Court of Common Pleas, Case No. 16-CR-0098 of Trafficking in Drugs, a felony of the fourth degree in violation of 2925.03(A). 1T. at 139-141; State's Exhibit 4; State's Exhibit 5. McFadden's trial counsel did not object. However, defense counsel did ask, and the trial court did redact, information related to the sentences McFadden received on each of his prior cases. 2T. at 257-258.

**{¶53}** McFadden contends that evidence of one conviction was permissible in order to prove that he was under a disability as required by R.C. 2923.13. [Appellant's brief at 24]. However, McFadden argues that, had trial counsel objected, the admission of the two additional convictions would have been excluded under Evid.R. 403(A), due to the "danger of unfair prejudice, of confusion of the issues, or of misleading the jury." [Appellant's brief at 25].

**{¶54}** In *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, 84 N.E.3d 981, the Court reviewed the United State Supreme Court decision in *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), adopted its reasoning in Ohio, and concluded,

> Pursuant to Evid.R. 403, in a case alleging a violation of R.C. 2923.13, when the name or nature of a prior conviction or indictment raises the risk of a jury verdict influenced by improper considerations, a trial court abuses its discretion when it refuses a defendant's offer to stipulate to the fact of the prior conviction or indictment and instead admits into evidence the full record of the prior judgment or indictment when the sole purpose of

the evidence is to prove the element of the defendant's prior conviction or indictment.

*State v. Creech*, 150 Ohio St.3d 540, ¶40.  *State v. Overton,* 5th Dist. Stark No. 2016 CA 00224, 2017-Ohio-8389, ¶24.  In adopting the reasoning of *Old Chief*, the *Creech* court acknowledged "the differences between R.C. 2923.13(A) and 18 U.S.C. 922(g)(1) in applying the holding to the Ohio statute."  *Creech* at ¶ 35.  The *Creech* court went on to reason the following:

What mattered for purposes of the federal statute is that the defendant had been sentenced to a crime punishable with a sentence of more than a year in prison.  The General Assembly in R.C. 2923.13 made some distinctions in determining the classes of crimes that should bar a convict from possessing a gun, but the classes are still broad.  What matters to the General Assembly—and an element that the state must prove—is that the crime the defendant was convicted of was either a "felony offense of violence" or a "felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."  R.C. 2923.13(A)(2) and (3).  In regard to R.C. 2923.13, a stipulation or admission concerning the status element would necessarily include the fact that the defendant was under indictment or had previously been convicted of a crime falling within those broad categories.

{¶55}  In the case sub judice, the sole purpose of admitting the evidence, State's Exhibits 3, 4, and 5 was to prove the element of McFadden's prior conviction for purposes of the Having Weapons While Under a Disability charge.  In this case wherein McFadden

was charged with the weapons count the jury was informed of the fact that he had three prior convictions, by the name and nature of the drug offenses rather than the generalized description of the disability as set forth in the statute.

{¶56} The case sub judice is distinguishable from *Creech.* At trial, McFadden did not offer to stipulate to any of his prior convictions. We have therefore previously found that a trial court did not err in allowing the state to present evidence of a defendant's prior conviction "as such was an element of the offense for which the state bears the burden of proof." *State v. Holland*, 5th Dist. Stark No. 2011 CA 00104, 2012-Ohio-486, ¶ 21; *See also, State v. Meadows,* 5th Dist. Richland Nos. 2019 CA 0019, 2019 CA0020, 2019-Ohio-4943, ¶27; *State v. Leasure,* 4th Dist. No. 15CA3484, 2015-Ohio-5327, 43 N.E.3d 477.

{¶57} In order to find that McFadden's trial counsel was ineffective, McFadden must establish prejudice. McFadden must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. *See, also, Andrus, v. Texas,* —— U.S. ——, 140 S.Ct. 1875, 1881, 207 L.Ed.2d 335 (June 15, 2020). According to *Strickland,* a "reasonable probability" is more than "some conceivable effect," but less than "more likely than not [the error] altered the outcome of the case." *Strickland* at 693. A "reasonable probability" is a probability sufficient to undermine confidence in the result of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687–688, 690–691, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Williams *v. Taylor*, 529 U.S. 362, 390–391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *State v. Bradley*, 42 Ohio St.3d 136, 142–143, 538 N.E.2d 373 (1989), paragraph two and three of the syllabus.

{¶58} We are unpersuaded that the jury would have acquitted McFadden of all charges if they had only heard that he had one, as opposed to three, prior convictions for felony offenses involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse. We do not find the probative value of the second and third convictions was substantially outweighed by its prejudicial effect. At trial, McFadden did not offer to stipulate to any of his prior drug convictions. Therefore, the jury could have rejected one of the prior convictions and needed one of the other to establish the prior conviction element. *See State v. Henton*, 121 Ohio App.3d 501, 506 (11th Dist. 1997) (noting that admitting multiple prior offenses might be proper if defendant did not stipulate). *State v. Russell,* 12th Dist. Butler No. CA2012-03-066, 2013-Ohio-1381, ¶16. We cannot find, based on the record before us, that counsel's failure to object changed the results of the trial.

{¶59} Accordingly, we find that McFadden has failed in his burden to demonstrate a reasonable probability that the jury would have found him not guilty had trial counsel objected to two of the three prior drug convictions.

{¶60} McFadden's Fourth Assignment of Error is overruled.

V.

{¶61} In his Fifth Assignment of Error, McFadden claims he was denied the right to a fair trial based on cumulative error. Specifically, McFadden alleges that the errors outlined in his previous assignments of error amount to cumulative error requiring reversal.

{¶62} In *State v. Brown*, 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. However, as

explained in *State v. Bethel*, 110 Ohio St.3d 416, 2006–Ohio–4853, 854 N.E.2d 150, ¶ 197, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp*, 105 Ohio St.3d 104, 2004–Ohio–7008, 822 N.E.2d 1239, ¶ 103.

**{¶63}** Here, McFadden cites the doctrine of cumulative error, lists, or incorporates the previous assignments of error, and gives no analysis or explanation as to why or how the errors have had a prejudicial cumulative effect. Thus, this assignment of error has no substance under *Bethel* and *Sapp.*

**{¶64}** Further, where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter*, 5th Dist. No.2002CA00125, 2003–Ohio-1313 at ¶ 37. To the extent that we have found that any claimed error of the trial court was harmless, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard*, 104 Ohio St.3d 54, 89–90, 2004–Ohio–6235, 818 N.E.2d 229, 270 at ¶ 185.

**{¶65}** As this case does not involve multiple instances of error, this Court concludes that McFadden has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *State v. Perry*, 101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646 (2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶66}** McFadden's Fifth Assignment of Error is overruled.

{¶67} The judgment of the Ashland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Baldwin, J., and

King, J., concur